PEOPLE *v* WYNN

DECISION OF THE COURT

1. CRIMINAL LAW—LESSER INCLUDED OFFENSES—INSTRUCTIONS—APPEAL AND ERROR—COURT RULE.

Defendant did not make a legal request for instructions on lesser included charges in writing as required by a court rule, if indeed, he made any request at all; thus, the trial court's failure to give instructions on the lesser included charges is not reversible error (GCR 1963, 516.1).

OPINION FOR AFFIRMANCE

ADAMS, T. E. BRENNAN, and WILLIAMS, J.

2. CRIMINAL LAW—INSTRUCTIONS—REQUESTS FOR INSTRUCTIONS.

*If an inchoate or any other kind of request for instructions were made, it was receded from where the trial court, after it charged the jury and the jury had retired, and again, after supplemental charges were made, specifically asked all defense counsel whether they were satisfied with the charges and all indicated they were.*

3. CRIMINAL LAW—INSTRUCTIONS—COURT RULE.

*Request for jury instructions should be in writing as required by court rule (GCR 1963, 516.1).*

4. CRIMINAL LAW—LESSER INCLUDED OFFENSES—INSTRUCTIONS—APPEAL AND ERROR.

*Trial court's failure, on its own initiative, to issue an instruction on lesser included charges is not reversible error.*

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 53 Am Jur, Trial § 511.
[2–6] 53 Am Jur, Trial § 508 *et seq.*
[7, 10] 5 Am Jur 2d, Appeal and Error § 545.
[8] 53 Am Jur, Trial §§ 132 *et seq.;* 824 *et seq.*
[9] 53 Am Jur, Trial § 132 *et seq.*
[11, 12] 53 Am Jur, Trial § 796 *et seq.*
　5 Am Jur 2d, Appeal and Error § 545.

5. CRIMINAL LAW—INSTRUCTIONS—APPEAL AND ERROR—FUNDAMENTAL INJUSTICE—MISCARRIAGE OF JUSTICE—SUA SPONTE REVIEW.

No "fundamental injustice" requiring sua sponte review of the instructions and merits of the case was raised where the trial court specifically asked all defense counsel whether they were satisfied with the instructions and all indicated they were; the verdict was justified; and a close review of the transcript fails to reveal any reason why the verdict should be overturned as a miscarriage of justice.

6. CRIMINAL LAW—LESSER INCLUDED OFFENSES—INSTRUCTIONS.

Trial courts will not err if they instruct on lesser included offenses on their own initiative where that is appropriate.

CONCURRING OPINION
BLACK, J.

See headnote 1.

DISSENTING OPINION

T. M. KAVANAGH, C. J., and T. G. KAVANAGH and SWAINSON, JJ.

7. APPEAL AND ERROR—MANIFEST INJUSTICE—RULES OF PRACTICE.

The rule that a judge cannot be charged with error if the asserted error was never called to his attention is not universally applied; the Michigan Supreme Court, as a matter of grace, when satisfied that the record shows that a manifest injustice has been done, will overlook noncompliance of counsel with the rules of practice.

8. CRIMINAL LAW—INSTRUCTIONS—LESSER INCLUDED OFFENSES—STATUTES—COURT RULES—OBJECTIONS—EXCEPTION TO RULING.

A statute and a court rule provide essentially that formal exceptions to a court's charge or refusal to charge are not necessary and the whole thrust of these provisions is to eliminate the formality formerly required; therefore, where defense counsel made known that he wished the jury to be instructed on lesser included offenses the fact that he did not formalize his objection or take exceptions to the court's ruling, or renew his request subsequently is of no import (MCLA 768.30; GCR 1963, 507.5).

9. CRIMINAL LAW—TRIAL—OBJECTIONS.

To require defense counsel to mouth a collocation of words which could be formally labelled as an objection would exalt form over substance.

10. CRIMINAL LAW—INSTRUCTIONS—APPEAL AND ERROR.
  *The trial judge has the responsibility for correctly instructing the jury on the law and the rule of no appellate review of non-preserved error will not serve to absolve the trial judge from misinstructing the jury.*

11. CRIMINAL LAW—INSTRUCTIONS—LESSER INCLUDED OFFENSES— APPEAL AND ERROR.
  *Trial judge actually misinstructed the jury where he stated that it could return a verdict of guilty of the first count of robbery armed and not guilty of the second count of breaking and entering with intent to commit felonious assault, not guilty of the first count and guilty of the second count, guilty of both counts or not guilty of either count because the jury would on the record have been free to bring in a verdict of "guilty of entering a building without breaking with intent to commit larceny" or "guilty of entering a building without permission" and even if the defense attorneys had formally acquiesced in the court's erroneous ruling and had endorsed the instruction given, the jury so limited was misinstructed and this was reversible error (MCLA 750.111, 750.115).*

12. CRIMINAL LAW—LESSER INCLUDED OFFENSES—INSTRUCTIONS.
  *Whenever the evidence in a case would warrant a verdict of guilty of a lesser included offense the judge should be required to instruct the jury to that effect whether so requested or not and both the people and the defendant are entitled to it.*

Appeal from Court of Appeals, Division 1, Lesinski, C. J., and J. H. Gillis and Beasley, JJ., affirming Recorder's Court of Detroit, Robert E. DeMascio, J. Submitted November 4, 1971. (No. 29 October Term 1971, Docket No. 53,325.)  Decided February 25, 1972.  Rehearing denied April 10, 1972.

T. G. KAVANAGH, J., dissenting.

31 Mich App 80 affirmed.

Ronald Wynn was convicted of breaking and entering with intent to commit a felonious assault. Defendant appealed to the Court of Appeals. Affirmed. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Gerard Poehlman,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, and *Martin I. Reisig,* Assistant Defender, for defendant on appeal.

WILLIAMS, J.   Whether it was necessary for a defendant to object to the failure to grant as well as request a jury instruction on lesser included offenses in order to preserve the point for appeal was the principal issue in the Court of Appeals and in the briefs and arguments before this Court.   However, careful study of the record reveals that there is a threshold issue before that, namely, was there in fact a legal request.   If there was not, then there are two further issues in this case.   One, should the trial court have on its own initiative given such an instruction, even without any request.   The other, without either an objection or a request are the merits of the matter properly before this Court, and if not, should this Court consider them *sua sponte.*

Our dispositive finding and ruling is simple and short.   We find that defendant did not make a legal request for instructions on lesser included charges in writing as required by GCR 1963, 516.1, if indeed he made any request at all.   The trial court's failure to give instructions on the lesser included charges is not reversible error.   *People* v *Allie,* 216 Mich 133 (1921).   The trial court and the Court of Appeals are affirmed.

Analysis of the facts of the alleged offense, dialogues between attorneys and judge and consideration of arguments of counsel, however, are more

complicated and take longer. Defense counsel was zealous and imaginative and the prosecutor also supplied a thorough brief.

## I. FACTS OF THE CASE AND CASE HISTORY

The defendant Ronald Wynn, his brother Kenneth Wynn, and James White were charged on two counts, robbery armed and breaking and entering with intent to commit felonious assault. The complainant Ruth Turner and her new boyfriend Ernest Jackson were badly beaten and treated at a hospital as a result of the defendants entering her apartment about midnight and finding the two of them in bed together.

Ruth Turner admitted previous intimacies with James White but stated that they had subsequently quarreled violently and he had beaten her and threatened her life. She testified she had asked for her keys back from him and told him not to come to her apartment again. Both she and Ernest Jackson testified to meeting with neighbors in her apartment the night of the incident. Afterwards before retiring, they fastened a sliding inner latch she had put on her apartment door for fear of White using his key to get in. Ruth Turner further testified that defendants broke in after midnight, that White beat her with a pistol, said "Get up bitch," and later continued to beat her while Ronald Wynn held her. Ernest Jackson testified to the breaking in and being pistol whipped. Both testified to being hospitalized.

One of the neighbors, Cora Brown, testified to hearing a commotion in the Turner apartment hours after visiting Turner and Jackson and hearing White whom she had met through Ruth Turner say "Get up bitch." After she heard that she ran for help and the police. Later she saw the three defendants running away.

Officer Lawrence Seneski who policed the disturbance testified that when he arrived shortly after the incident and the defendants had fled, he found the bottom panel of the door had been kicked out. Detective John Uruhart testified that later that morning he went to interview Ruth Turner and found "the bottom panel of the door was opened, looked as though it was kicked out, but was back in the place when I arrived there."

Officer Seneski testified both Turner and Jackson had "multiple abrasions and lacerations about the face" and were "bleeding about the nose and mouth." He also said "her eyes were swollen" and that both left for the hospital.

Ronald Wynn and White testified for the defense that they visited the Turner apartment near midnight because she had earlier in the day requested by phone that White come and see her, that they entered using the key that Ruth Turner had given White, which White said she had begged him to keep. That key and the outside apartment building door key were introduced into evidence. They testified that they did nothing but talk until Jackson lunged at White with a knife, when White hit Jackson and disarmed him, and shortly after this, at Wynn's urging they left, although White said Jackson offered him a beer and said "Let's reason this out, man to man."

Before charging the jury, the Honorable Robert DeMascio, trial judge, called the three counsel for the three defendants and the assistant prosecutor into chambers for discussion of jury charges. It was here that defendant Wynn claims that a request for an instruction on lesser included offenses was made. (The record of the colloquy will be set out later.) After the court charged the jury and the jury had retired, the court asked counsel for "Addi-

tions or corrections." A number of requests were made but none went to a lesser included offense charge. Certain additional charges were made, after which counsel were asked again whether there were further requests, but all said they were satisfied.

On January 17, 1969, the jury found defendant Ronald Wynn guilty on the charge of breaking and entering with intent to commit a felonious assault. However, the jury could not reach a verdict on the charge of robbery armed, and the charge was subsequently dismissed.

The Court of Appeals affirmed the defendant's conviction on February 22, 1971. The Court held that though the defendant produced evidence compatible with lesser included offenses, the trial court did not err in failing to instruct as to the lesser included offenses as none of the three attorneys for the codefendants objected to the instructions as given. On May 19, 1971, this Court granted the defendant's delayed application for leave to appeal.

The defendant requests a new trial on the grounds that the lesser included offenses of entering without breaking and entering without permission should have been included in the instructions to the jury. He contends that once a request for an instruction has been made and denied, an objection to the instructions as given serves no purpose and thus is not necessary. The defendant cites GCR 1963, 507.5 for the proposition that if a party makes known to the court the action which it desires, a formal objection is not necessary.

The people argue first no one made a request for a lesser included charge; second, defendant Ronald Wynn's attorney never requested such a charge; third, the codefendant's attorney who requested such an instruction acquiesced in the trial court's ruling

that such an instruction would not be given; fourth, even if a request for such an instruction were in fact made and should have been granted, failure of the trial court to give it does not constitute reversible error as no objection was raised to the instructions as given.

The people rely upon GCR 1963, 516 which states:

"1. Request for Instructions. At or before the close of the evidence, any party may, or at any time the Court reasonably directs, the parties shall, file written requests that the Court instruct the jury on the law as set forth in the request.    *    *    *

"2. Objections. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider the verdict, stating specifically the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."

In addition, the people argued that the question raised in the trial court by defense counsel relative to lesser included offenses concerned "breaking without intent to steal or entering without permission," whereas the theory of defendant's case was based on entry with permission *i.e.*, with the victim's keys. In other words the alleged request for inclusion of lesser offenses concerned entry "without permission," whereas the defendant's case was based on an inconsistent theory of entry "with permission".

## II. (FIRST ISSUE)—DID DEFENDANT REQUEST INSTRUCTION?

### II (A)—FACTS.

If any request for jury instruction was made, it occurred in the following in chambers colloquy. Incidentally, Mr. Klein was attorney for defendant

James White; Mr. Stackpoole for Ronald Wynn, the defendant in this action; Mr. Jones was attorney for defendant Kenneth Wynn; and Mr. Gibbs was an assistant prosecuting attorney. This is what the record shows:

"In-chambers discussion of proposed charges:

"*The Court:* We will retire to chambers.

(Whereupon the following colloquy ensued between Court and counsel in chambers.)

"*The Court:* All right. Now, no one has submitted charges here in writing and I trust that you have not filed them, at least up to this point. Do you have one filed now?

"*Mr. Klein:* No.

"*Mr. Stackpoole:* Not now.

"*Mr. Jones:* No written instructions.

"*Mr. Gibbs:* I have some written notes.

"*The Court: I recognize charges that are filed formally in writing* and made a part of the file. That is the only way that the Court of Appeals knows there were submitted charges. All right.

\*       \*       \*

"*The Court:* \* \* \* Anything more?

"*Mr. Jones: I am sure that the second count has included offenses.*

"*The Court:* Felonious assault has an included offense, Mr. Jones, and the included offense in felonious assault is aggravated assault or assault and battery.

"*Mr. Jones:* I will go along with that, but *I am saying there is included offenses for B and E.*

"*The Court:* No.

"*Mr. Jones: Like breaking without intent to steal or entering without permission.*[1]

---

[1] Note the discussion here relates to "like breaking without intent to steal" whereas the appeal and the statute are based on entering without breaking. Defense brief p 3, MCLA 750.111; MSA 28.306. So this language in no way supports defense theory of appeal. Defendant also refers to the misdemeanor of breaking and entering or entering without permission (MCLA 750.115; MSA 28.310) which has no reference at all to assault of any kind.

*"The Court: No; not under these facts. Too much evidence indicates that the door was broken into.*

*"Mr. Jones: But not enough evidence to show intent to commit a felony therein, to-wit, felonious assault.*

*"The Court: There is plenty of evidence of that.*

*"Mr. Jones: All right.*

\*     \*     \*

*"The Court:* That's right. *I think defense counsel are not requesting included charges.* They are saying that there was nothing here, no robbery.   \*   \*   \*

"How can you have included offenses on a record like this? I wouldn't grant it for the prosecutor. They don't request it. Anything further?" (Emphasis supplied.)

## II (B)—WAS THERE A REQUEST IN FACT?

It's highly dubious that the above colloquy includes a request for instructions.

On the one hand, attorney Jones did in fact raise the matter of lesser included offenses. He said among other things "I am sure that the second count has included offenses \* \* \* I am saying there is included offenses for B and E \* \* \* Like breaking without intent to steal or entering without permission."

But on the other hand, in the entire colloquy there is no language equivalent to "I request".

The nature of the dialogue rather than being in the form of a request for an instruction is in the form of a legal discussion between two lawyers as to whether or not under the facts of the case there could be lesser included offenses. Attorney Jones seemed to be reaching for an idea, but as soon as he got near one, the court shot the idea down before he could reduce it to possession.

Attorney Jones's first attempt "I am sure that the second count has included offenses" is shot down by the court coming up with included offenses for the first count. Then attorney Jones shifts back to "included offenses for B and E  *  *  *  Like breaking without intent to steal or entering without permission." The court harpoons that with "No; not under these facts. Too much evidence indicates that the door was broken into." Whereupon attorney Jones says "But not enough evidence to show intent to commit a felony therein  *  *  *  ", arguing for his suggestion "breaking without intent to steal." The court spears this with "There is plenty of evidence of that". It is possible that attorney Jones might have had in mind making a request for a jury instruction on lesser included offenses, but it is very difficult from any reasonable interpretation of the language used to say that he actually got around to articulating any such request.

## II (C)—IF THERE WAS AN INCHOATE REQUEST, WAS IT RECEDED FROM?

Assuming arguendo that an inchoate or any kind of request was made, was it receded from?

Attorney Jones after the above discussed dialogue with his suggestions or arguments being torpedoed by the Court faster than he could come up with them, responded *"All right."* "All right" indicates acquiescence or withdrawal.

In any event, on two subsequent occasions, first after the court charged the jury and the jury had retired, and second after supplemental charges were made, the court specifically asked all defense counsel whether they were satisfied with the charges and all indicated they were.

Under these circumstances the Court finds that if an inchoate or any other kind of request were made, it was receded from.

## II (D)—WAS THERE A REQUEST: TRIAL COURT'S ATTITUDE.

The trial court made it clear that he didn't think there had been a request for a jury instruction on lesser included offenses. In the above colloquy in chambers the trial judge began by asking whether any one had submitted "charges here in writing" and subsequently emphasized the point by saying: "I recognize charges that are filed formally in writing * * * That is the only way that the Court of Appeals knows there were submitted charges." The colloquy ended with adjournment.

Just prior to adjournment, the assistant prosecuting attorney, using the word "request" formally asked for an included lesser offense on the first count only to be refused with the word "denied." The assistant prosecutor then said: "The record is clear." To which the court replied: "That's right. *I think defense counsel are not requesting included charges.* * * * They don't request it. Anything further?" (Emphasis added.) Defendant Ronald Wynn's attorney Mr. Stackpoole replied: "Yes. Is it your intention not to charge the jury until tomorrow or don't you know yet?" The judge said he didn't know yet and adjourned the session.

In other words, the court said "I think defense counsel are not requesting included charges" in the presence of defense counsel on the record, and no one there corrected him, if they didn't agree with him. With an adjournment a proper written instruction could easily have been prepared, if desired.

On the record, therefore, it appears clear that the court did not consider that any request for a charge

on lesser included offenses had been made, had indicated any such request would have had to be in writing, and had said in so many words before defense counsel that he thought "defense counsel are not requesting included charges" without defense counsel taking any advantage of the opportunities to request instruction on lesser included charges or object to the failure to so charge.

## II (E)—WAS THERE A REQUEST: GCR 1963, 516.1?

As already indicated we are not convinced that an actual request for jury instructions on lesser included offenses was made, even orally. However, we find that if any were attempted, such inchoate request was abandoned.

However that may be, we agree with the trial judge that requests for jury instructions should be in writing as required by GCR 1963, 516.1 and this holding controls this branch of the case.

The perambulations required in this case because defense counsel failed to abide by GCR 1963, 516.1 are reason enough for enforcing this rule.

Since we find there was no request for instruction, we find it unnecessary to consider whether an objection in addition is necessary, or to review the Court of Appeals opinion requiring such a request.

## III. (SECOND ISSUE)—SHOULD TRIAL COURT ON OWN INITIATIVE HAVE GIVEN INSTRUCTION ON LESSER INCLUDED OFFENSES WITHOUT REQUEST OR OBJECTION?

*People* v *Allie*, 216 Mich 133 (1921) is dispositive of this issue. It is a strong case because the defense cited a number of Michigan rape cases holding that

"the trial court must, upon his own initiative, instruct the jury as to the lesser offenses included in the offense charged." The prosecutor cited Michigan cases to the opposite effect. (P 135.) This Court looked to 3 Comp Laws 1915, § 15616 and observed: "This statute would clearly give a defendant in a criminal case the right to have the jury instructed that he could be convicted of any of the included offenses." "The question then arises," this Court said, "whether it was reversible error for the trial court to neglect to give this instruction upon his own initiative." (P 136.) This Court thereupon considered the cases in the field and answered its own question—no, it is not reversible error, by affirming the conviction without the lesser offenses having been charged. Furthermore, in reaching this conclusion, this Court said that the rape cases requiring the trial court to charge on lesser included offenses on its own initative "have gone too far  *  *  * and  *  *  *  are out of line with the general rule *  *  *  [and] must be modified to conform with the general rule." (P 138.)

This rule was recognized, describing subsequent adopting cases, but distinguished, in *People* v *Jones, 273 Mich 430 (1935). That case neatly described the rule: " * * * in the absence of a request to charge, the court does not err in failing to instruct upon the included offenses." (P 432.) See also *Sarazin* v *Johnson Creamery, Inc, 372 Mich 358, 363 (1964).

To the same effect is section 29 of the Code of Criminal Procedure (MCLA 768.29; MSA 28.1052) which reads as follows:

"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth

regarding the matters involved. The court shall instruct the jury as to the law applicable to the case and in his charge make such comment on the evidence, the testimony and character of any witnesses, as in his opinion the interest of justice may require. The failure of the court to instruct on any point of law shall not be ground for setting aside the verdict of the jury unless such instruction is requested by the accused."

There is a different rule which is sometimes, and in this case was, confused with the rule in *Allie*. The distinction is carefully and aptly drawn in *People v Jones, supra*. As just noted, *Jones* described the *Allie* rule as " * * * in the absence of a request to charge, the court does not err in failing to instruct upon the included offenses." *Jones* then went on:

"However, the rule does not excuse *improper* instructions. Here the court did more than fail to charge upon the included offenses. It affirmatively excluded them from the consideration from the jury. This was error because, under 3 Comp Laws 1929, § 17325, the jury was authorized to find the defendant guilty of a lesser offense than rape." (Emphasis added.)    (273 Mich 430, 432.)

To the same effect are *People v Lemmons*, 384 Mich 1 (1970); *People v Guillett*, 342 Mich 1 (1955); *People v Hamilton*, 76 Mich 212, 216 (1889); *People v Murray*, 72 Mich 10, 16 (1888); *People v Reece*, 9 Mich App 108 (1967). The error referred to in these cases one way or another is not that they failed to give a charge but that the charge that was given was *"improper"* and erroneous.

Obviously, the instant case is not one where an "improper" charge is complained of. Rather it is one where the lesser included charges were not given. So the *People v Jones* rule relating to an "improper" charge is not applicable to this case.

On the issue then as to whether it was reversible error for the trial court to fail on its own initiative to issue an instruction on lesser included charges, the law in Michigan is that such failure is not reversible error.

## IV. (THIRD ISSUE)—SHOULD THIS COURT CONSIDER FAILURE TO CHARGE SUA SPONTE?

The leading opinion on the subject of *sua sponte* appellate review is that of Chief Justice THOMAS M. KAVANAGH in *People v Dorrikas,* 354 Mich 303 (1958). There this Court although the error had not been properly saved, reversed a trial judge who had permitted highly prejudicial but unsubstantiated questions on cross examination, which seriously affected the jury's determination of the very guilt or innocence of the defendant. Chief Justice KAVANAGH spoke as follows:

"Ordinarily where no timely objection was made to the introduction of such testimony and no request to charge was made, this Court would not examine the points relied upon for reversal, and except under unusual circumstances we have no disposition to relax this rule. Nevertheless, as in a number of previous cases, this Court, in the exercise of supervisory control over all litigation, has often asserted the right to consider manifest and serious errors although objection was not made by the party who appeals. The inherent power of this Court to prevent fundamental injustice is not limited by what appellant is entitled to as a matter of right. *People v Steeneck,* 247 Mich 583 [1929]; *People v Holmes,* 292 Mich 212 [1940]; *People v Kelsey,* 303 Mich 715 [1942]." (354 Mich 303, 316.)

My Brother Justice ADAMS in *People v Farmer,* 380 Mich 198 (1968) has spoken to the same problem

where questionably voluntary confession was admitted without objection but later attacked after conviction in the following words:

"While this Court does have inherent power to review even if error has not been saved—*People* v *Dorrikas* (1958), 354 Mich 303—such inherrent power is to be exercised only under what appears to be compelling circumstances to avoid a miscarriage of justice or to accord a defendant a fair trial." (380 Mich 198, 208).

*People* v *Allie, supra,* in affirming the conviction without an unrequested charge on lesser included offenses declined to look at the unpreserved error—thereby not exercising the right to review the merits *sua sponte.*

GCR 1963, 507.5 urged by defendant as authority for this Court to review on the merits *sua sponte* is not in point.

Overlooking that this rule applies to exceptions not objections or failures to request, it is instructive to analyze the text of this rule:

"Exceptions unnecessary. Formal exceptions to rulings or orders of the court are unnecessary. It is sufficient that a party, at the time of the ruling or order of the court is made *or sought, makes known to the court the action which he desires* the court to take *or* his objections to the action of the court and his grounds therefore; *and, if a party had no opportunity to object to a ruling or order at the time it is made the absence of the objection does not thereafter prejudice him.*" (Emphasis supplied [by defendant p 21 of his brief].)

In the face of the above statement by the trial court and silence of defense counsel after the ambiguous dialogue between the trial court and attorney Jones earlier it is stretching the English lan-

guage to say that the language in the record "makes known to the court the action which he desires". The last clause of the rule certainly does not aid the defendant's case, because to say the failure to object is excused because there was no opportunity to object flies in the face of the record. This raises no "fundamental injustice" requiring *sua sponte* review.

Incidentally, at this point it may be well to note that defendants do not always want instructions on lesser included offenses. Objecting to the inclusion of lesser offenses in the trial court's instructions[2] has come to this Court on appeal. This is presumably on the ground the jury would have more difficulty in convicting the defendant on the major charge and thus be compelled to give the defendant his full freedom.

We note that counsel for a codefendant in this case speculated with the judge as to whether there were lesser proper charges in this case without making a request and in any event subsequently seeming to withdraw with an "All right." Counsel for defendant Ronald Wynn himself never said anything about an instruction on lesser included offenses, so it is completely impossible to say what was on his mind, whether he read attorney Jones' mind and agreed with him, whether he reluctantly agreed with the trial judge, or whether he had a defense strategy all of his own. In any event, when asked if they wanted "additions or corrections," all ended up saying they were satisfied.

This Court does not imply the attorney for defendant Ronald Wynn did not want an instruction on lesser included offenses. It just points out that where GCR 1963, 516.1 is not adhered to, the record is too vague for proper appellate action.

---

[2] *People* v *Milhem,* 350 Mich 497, 499–500 (1957). See also *People* v *Herrera,* 12 Mich App 67, 85 (1968).

Finally, the jury verdict convicting defendant of breaking and entering with intention to commit felonious assault was justified. In the colloquy between attorney Jones and the trial judge it is clear that the judge had been persuaded by the testimony of the probability of a breaking ("Too much evidence indicates the door was broken into") and of a felonious assault ("There is plenty of evidence of that."). The trial judge was on the scene and had ample opportunity to weigh the testimony.

Close review of the transcript fails to reveal any reason why the jury verdict should be overturned as a miscarriage of justice. Not only did the complainant Ruth Turner and Ernest Jackson testify that the door was broken in after having been securely locked by slide bolt from within, but the broken door was observed by two police officers and testified to. The testimony of defendants that they dropped in about midnight pursuant to a phoned invitation earlier in the day and that they did nothing but talk until Jackson lunged at White with a knife when White admitted hitting Jackson and disarming him and leaving shortly thereafter loses credibility with the police report of multiple abrasions and lacerations and bleeding mouth and nose of both Ruth Turner and Ernest Jackson and Ruth Turner's swollen eye. The neighbor Cora Brown's testimony of hearing a great commotion and White's calling Ruth Turner "Get up bitch" before calling the police and later seeing the three defendants running away also tests the credibility of defendant's story in such a way as to justify the jury's verdict.

Defendant observes in his brief "To avoid manifest injustice the courts have been willing to review charges to a jury absent either a request or an objection", citing *People* v *Jones, supra; People* v

*Reece, supra;* and *People* v *Lemmons, supra.* But as we have already considered, none of these cases are in point as they apply to "improper" instructions rather than omitted instructions.

To sum up, the *Allie* case and the facts of the instant case make it difficult to justify this Court's reviewing the merits of this case *sua sponte.*

## V. CONCLUSION.

This case illustrates two things that invite commentary.

First, the failure of defense counsel in the trial court (different from those on appeal) to file a written request for instruction on lesser included offenses and to raise an objection, assuming they wanted such an instruction, can be explained only by too many cases for too few trial attorneys or sloppy practice or both. One is reminded of my Brother Justice BLACK's language in *Smith* v *Musgrove,* 372. Mich 329, 339 (1964) which speaks for itself:

"Counsel for appellant owed to the trial judge clear duty, on peril of loss of right to allege reversible error, either to submit a formal request for corrective instruction on or before commencement of the jury charge the next morning, or at least to bring up at conclusion of the charge the judge's inadvertent omission of such instruction."

Second, there is an important though difficult line between this Court's being protector of defendant's right and being his advocate. As the cases considered above indicate, as far as considering the merits of granting a new trial where counsel have failed to preserve error, that is the job of counsel. However, where there is an improper charge, the observation of this Court in *People* v *Murray,* 72 Mich 10, 16 (1888) is pertinent:

"Without any requests from counsel it is the duty of the circuit judge to see to it that the case goes to the jury in a clear and intelligent manner, so that they may have a clear and correct understanding of what it is they are to decide, and he should state to them fully the law applicable to the facts. Especially is this his duty in a criminal case. In this case it was not so done. Too much reliance is often placed upon counsel by the court in this respect for requests; but this should not be done. The court must do its duty in a criminal case, whether counsel do so or not. It is to the court that the accused has a right to look to see that he has a fair trial."

While these remarks apply to making improper charges, trial courts will not err if they instruct on lesser included offenses on their own initiative where that is appropriate.

Trial court and Court of Appeals affirmed.

ADAMS and T. E. BRENNAN, JJ., concurred with WILLIAMS, J.

BLACK, J. (*concurring*). I concur with the first two paragraphs of Justice WILLIAMS' opinion and with the result proposed at conclusion thereof.

T. G. KAVANAGH, J. (*dissenting*). The pertinent part of the transcript of the colloquy among the court and the attorneys is:

"*The Court:* Anything more?
"*Mr. Jones* [*attorney for defendant*]: I am sure that the second count has included offenses.
"*The Court:* Felonious assault has an included offense, Mr. Jones, and the included offense in felonious assault is aggravated assault or assault and battery.
"*Mr. Jones:* I will go along with that, but I am saying there is included offenses for B and E.
"*The Court:* No,

*"Mr. Jones:* Like breaking without intent to steal or entering without permission.

*"The Court:* No; not under these facts. Too much evidence indicates that the door was broken into.

*"Mr. Jones:* But not enough evidence to show intent to commit a felony therein, to-wit, felonious assault.

*"The Court:* There is plenty of evidence of that.

*"Mr. Jones:* All right.

\*    \*    \*

*"The Court:* That's right. I think defense counsel are not requesting included charges. They are saying that there was nothing here, no robbery.
\*    \*    \*

"How can you have included offenses on a record like this? I wouldn't grant it for the prosecutor. They don't request it. Anything further?"

What are the trial judge's responsibilities with respect to jury instructions?

In *People* v *Allie,* 216 Mich 133 (1921), Justice Bird, writing for five members of the Court said (p 136):

"We think it clear under the terms of the statute that the defendant was entitled to have an instruction that he could be found guilty of an attempt to commit the crime of robbery or of assault and battery. The question then arises whether it was reversible error for the trial court to neglect to give this instruction upon his own initiative."

He then went on to hold that the general rule is that questions will not be reviewed unless raised in the court below and that the court will not reverse verdicts for failure to charge specifically on some question where it was not requested.

In dissent, Justice Clark writing for himself and Justices Moore and Fellows asked a most pertinent question (p 139):

"If an instruction respecting the included offenses as provided by the statute quoted by Mr. Justice BIRD may be omitted and excused on the ground of the failure of counsel to prefer a request upon the subject, why may not a failure to instruct upon any subject be likewise excused, or indeed, a failure to charge the jury at all?"

The rationale of the cases cited by Justice BIRD in support of his holding—*People* v *Brott*, 163 Mich 150 (1910); *People* v *Farrell*, 146 Mich 291 (1906); *People* v *Page*, 198 Mich 524 (1917); *People* v *Luce*, 210 Mich 621 (1920) (quoting 16 CJ p 980); *People* v *Maczulski*, 194 Mich 193 (1916), is the reasonable position that a judge cannot be charged with error if the asserted error was never called to his attention. The court will not and should not let a litigant "lie in the bushes" or take "two bites of the apple". This is the sense of the rule and a defensible rule of appellate review under most circumstances.

That this is not universally applied of course is evident from even some of the cases cited by Justice BIRD. In *People* v *Brott, supra,* for example the Court noted that as a matter of grace, when the Court is satisfied that the record shows that a manifest injustice has been done, it will overlook noncompliance of counsel with the rules of practice. That we still follow this practice is too well known to need citation of authority.

But there is no need to invoke the rule in this case, however, for no fair reading of this record will support the conclusion that the need to instruct on lesser included offenses was not called to the trial judge's attention. The court's response in the colloquy quoted above shows it was brought to his attention. The error was not induced by the defendant's inaction, but rather the court's intrusion into the field of the jury and *his* determination that "Too

much evidence indicates that the door was broken into" and *his* conclusion that "There is plenty of evidence  \*  \*  \*  (of intent)".

This circumstance is one of those specifically intended by MCLA 768.30; MSA 28.1053 and GCR 1963, 507.5, which provide essentially that formal exceptions to a court's charge or refusal to charge are not necessary.

The whole thrust of these provisions is to eliminate the formality formerly required. The colloquy here shows clearly that defense counsel made known what action he desired. The fact that he did not formalize his objection or take exception to the court's ruling, or renew his request subsequently is of no import. As we said in *People* v *Shirk*, 383 Mich 180, 193 (1970):

"To require defense counsel to mouth a collocation of words which could be formally labelled as an objection  \*  \*  \*  would exalt form over substance."

My Brother says that if the "attempted" or "inchoate" request was made it was abandoned because the defense counsel said "all right" after the judge's ruling and said he was satisfied after the charge was given.

Whatever the validity of that conclusion it does not solve the problem here.

The trial judge has the responsibility for correctly instructing the jury on the law. The rule of no appellate review of non-preserved error will not serve to absolve the trial judge from misinstructing the jury as my Brother notes in his apt quotation from *People* v *Murray*, 72 Mich 10, 16 (1888). The trouble here is that when the court improperly ruled on the defendant's "inchoate" request, and consistently instructed the jury:

"Now, members of the jury, there are certain verdicts which you are permitted to return here and I will state those verdicts to you * * * ." * * *

"That means that you can return a verdict of guilty of Count One, not guilty of Count Two; not guilty of Count One and guilty of Count Two; guilty of both counts or not guilty of either count. That would be six possible verdicts as to each defendant."

He actually *misinstructed* the jury, because the jury would on this record have been free to bring in a verdict of "guilty of entering a building without breaking with intent to commit larceny"[1] or "guilty of entering a building without permission".[2]

Even if the defense attorneys had formally acquiesced in the court's erroneous ruling and had endorsed the instruction given, the jury so limited was misinstructed. This is reversible error.

Whenever the evidence in a case would warrant a verdict of guilty on a lesser included offense we should require a judge to instruct the jury to that effect whether so requested or not. Both the people and the defendant are entitled to it.[3]

Here where the judge was so requested and refused, it makes a mockery of our system to say we will not insist upon it.

I would reverse for a new trial.

T. M. Kavanagh, C. J., and Swainson, J., concurred with T. G. Kavanagh, J.

---

[1] MCLA 750.111; MSA 28.306.
[2] MCLA 750.115; MSA 28.310.
[3] This is consonant with the observation by Justice Butzel in his dissent in *People v Netzel*, 295 Mich 353, 356, 357 (1940), wherein the purpose of the statute was discussed.